Filed 1/15/25  P. v. Ramirez-Ramos CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROBERT RAMIREZ-RAMOS,<br><br>Defendant and Appellant. | F087336<br><br>(Super. Ct. No. VCF361905B)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Peña, Acting P. J., Smith, J. and De Santos, J.

## INTRODUCTION

In 2019, a jury convicted defendant Robert Ramirez-Ramos of shooting at an occupied vehicle (Pen. Code, § 246; count 3) and found true allegations the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that a principal personally discharged a firearm during the commission of the offense (§ 12022.53, subds. (c) & (e)(1)). Defendant was sentenced to 15 years to life pursuant to section 186.22, subdivision (b)(4)(B). (Undesignated statutory references are to the Penal Code.) On appeal, we reversed the gang enhancement and the firearm enhancement based on the passage of Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) and remanded for further proceedings.

On remand, the parties entered into stipulations based on the appellate opinions in defendant's and his codefendants' cases. A court trial was held and the court found beyond a reasonable doubt that the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. Defendant was again sentenced to 15 years to life pursuant to section 186.22, subdivision (b)(4)(B).

On appeal, counsel filed a *Wende* brief asking this court to review the record to determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief. More than 30 days have elapsed and we have received no communication from defendant. After reviewing the entire record and finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On February 3, 2018, defendant and his three codefendants, Francisco Nava, Steven Lopez, and Ruben Perez, engaged in a confrontation at a convenience market gas station with E.D. and his girlfriend, C.A. E.D. was wearing a navy blue shirt and had a Los Angeles Dodgers decal on his car. The defendants yelled gang slurs at E.D., Lopez

2.

and Perez threw drinks in the car E.D. and C.A. were sitting in, and Lopez grabbed E.D.'s shirt and struck him in the back of the head, scratching his neck. Perez also tried to grab E.D.; E.D. drove away. When E.D. stopped at an intersection, he saw a black car speeding toward him, heard two gunshots and glass breaking, and felt an impact on his car. Surveillance footage from the gas station depicted defendant as the driver of the black car.

A jury convicted defendant and his three codefendants of shooting into an occupied motor vehicle in February 2018 (§ 246; count 3) in connection with the incident and found true an allegation a principal used a firearm during the commission of the offense within the meaning of section 12022.53, subdivisions (c) and (e)(1). The jury also found the crime was committed for the benefit of a criminal street gang within the meaning of former section 186.22, subdivision (b)(1)(C). The court originally sentenced defendant on January 23, 2020, to an indeterminate term of 15 years to life on count 3 pursuant to section 186.22, subdivision (b)(4)(B); the firearm enhancement pursuant to section 12022.53, subdivisions (c) and (e)(1) was ordered stayed. Defendant was ordered to pay a restitution fine in the amount of $5,000 pursuant to section 1202.4 and the court also imposed a parole revocation fine in the amount of $5,000 pursuant to section 1202.44, to be suspended pending successful completion of parole. Defendant was also ordered to pay a $30 criminal conviction assessment pursuant to Government Code 70373, and a $40 court operations assessment pursuant to Penal Code section 1465.8. Victim restitution was ordered to remain open. Defendant was awarded 803 total credits for time spent in custody, composed of 104 local conduct credits and 699 actual credits.

Defendant appealed from the judgment and our court previously reversed the gang and firearm use enhancements and remanded the matter to the trial court in *People v. Ramos* (Apr. 27, 2022, F080916) 77 Cal.App.5th 1116, in light of the legislative changes enacted by Assembly Bill 333 and our conclusion the record did not support the heightened evidentiary requirements set forth in section 186.22 as amended by Assembly

3.

Bill 333. On remand, defendant agreed to waive a jury trial on the gang and firearm use allegations. The parties stipulated the only issues before the court were those concerning sections 186.22, subdivisions (b)(1)(C), (b)(4), and (d) as well as section 12022.53, subdivisions (c) and (e)(1). They also stipulated to the conviction for the underlying crime, the non-gang-related enhancements, and that the prior exhibits from the trial would be readmitted with any previous objections for evaluation by the court for purposes of the court trial. They further stipulated to the testimony regarding the prior gang contacts from the jury trial.

During the court trial, Officer Daniel McBride testified he worked for the Tulare County Sheriff's Office from 2004 to 2020. On July 27, 2016, Officer McBride was assigned to property crimes. At around 9:00 a.m. that day, he was called to assist another detective on an assault with a deadly weapon offense that occurred at the Bob Wiley Detention Facility. Officer McBride first went to Kaweah Delta Medical Center where he spoke to the victim and documented his injuries. The victim reported he was a Norteño and that he had Norteño-related tattoos. He told Officer McBride that, a week prior to the assault, he was sleeping in his cell when his cellmate came in and told him it was against the Norteño rules to sleep during the day. They got in a verbal argument during which the cellmate said something negative about the victim's son; the victim then punched his cellmate in the mouth.

Officer McBride next went to the detention facility where he received a briefing and watched video surveillance from the dayroom documenting the assault that occurred that day. It depicted the victim exiting the shower and his cellmate assaulting him with two other Northerners. Officer McBride interviewed several inmates housed in the facility at that time. Christopher Gomez, who was the victim's cellmate, and the other two individuals involved in the assault—Robert Saldana and Jonathan Ramos—were all convicted of the attack. The prosecution introduced evidence of the certified conviction of Christopher Gomez related to the incident. Sergeant Jerry Neves with the Tulare

County Sheriff's Office testified he was in charge of preparing the gang supplemental report for that case. He detailed his formal training with regard to gangs. The parties stipulated to his gang expertise. He opined Christopher Gomez and Jonathan Ramos were members or associates of the Norteño criminal street gang at the time of the assault. He explained, module 42, where the attack occurred, "only housed active Norteno criminal street gang members." He testified a hypothetical scenario mirroring the facts of the assault showed the crime was committed in association with, at the direction of, or for the benefit of a criminal street gang in that they would be removing or retaliating against a "potential rival or enemy," which was a benefit that was more than reputational. It also benefitted the gang by intimidating the other individuals in the unit that were not participating in the assault and by instilling fear in them.

Detective Jeremy McMillan worked for the Woodlake Police Department on June 21, 2015. At 11:00 p.m. he was dispatched to a disturbance in Woodlake. When he arrived at the scene, there was a group of individuals playing loud music and conversing in a driveway. Detective McMillan approached three subjects in the driveway. One of them, identified as Jacob Ramos, immediately "started causing a disturbance" with Detective McMillan. The subject took off his shirt, wanted to fight, was using slurs and making threats, and was yelling "'Norte, bitch'" and "'Norte Visa.'" He had tattoos commonly associated with Norteño gangs. Detective McMillan requested backup. Backup arrived and Jacob Ramos retreated to his residence, but then he started making comments and threats from a bedroom window that "he had guns and knew how to shoot." The police decided "the risk wasn't worth the reward," so, they obtained a warrant to arrest the subject at a later point during a traffic stop or when he left the house. The prosecution submitted evidence of Jacob Ramos's certified conviction related to the incident. Officer Joel Arjona testified he read the report related to the incident and he was asked "to write a gang opinion" regarding it. He deemed it a "gang crime" based on the fact Jacob Ramos was a gang member with tattoos yelling gang slurs and violent

5.

statements towards the officer. Officer Arjona opined the crime promoted the gang in that Jacob Ramos was yelling "'Norte bitch'" and "'North Side Visa,'" and "when somebody yells that vocally, they're promoting their gang." He testified it benefitted the gang by promoting it and instilling fear in the officer and "that he's not going to jail," so "there's one additional Norteno gang member who is not in custody."

Former police detective Jacob Sorenson testified he was working in the violent crimes unit of the Visalia Police Department in 2017. On April 6, 2017, he was dispatched to a shooting scene and assisted with the investigation. He contacted two individuals at the scene and learned there were two shootings that occurred within a few minutes. A silver Mercedes filled with Asian males pulled up, two Hispanic males ran by, and then the shooting occurred. Michael See and Raymundo Nava Torres were identified as suspects in the shooting and arrested. The People submitted certified copies of the convictions related to the incident as evidence. Sergeant Ricardo Loza testified he was working at the Visalia Police Department on April 6, 2017, and investigated the shooting that was between two Norteño gang members and Oriental Troop gang members. After being posed with a hypothetical scenario mirroring the facts of the two shootings, Sergeant Loza opined, based upon his knowledge of gangs, experiences with gang members, and investigating gang crimes, that the first shooting was gang-related and involved Norteño gang members shooting at their rivals, the Oriental Troop gang members, who were driving by or hanging out in a Norteño area. He testified the crime was committed in association with the gang in that there were multiple subjects involved and it occurred in front of the house of a known Norteño gang member. He opined the crime benefitted the gang by "actually tak[ing] out and maybe kill[ing] a rival. There is one less Oriental Troop gang member that the Norteno gang members would have to worry about."

Officer Arjona testified he was a part of the gang suppression unit in Visalia from January of 2013 until February of 2017. His duties involved contacting gang members,

6.

validating gang members, building a rapport with gang members, and arresting gang members involved in criminal activities. He had to "do a lot of education, education to schools, education to the public, [and] also obtain education." He also belonged to the Tulare County Gang Task Force. Officer Arjona testified the gangs in Visalia "are based upon race." The Norteños and Sureños are typically Hispanic gangs. He explained the Norteños are a street-level gang of the Nuestra Familia, which is a prison-based gang. They have multiple rivals, including Sureños and Oriental Troops.

Officer Arjona was presented with a hypothetical scenario of facts mirroring those of the instant case. He opined the crime was committed in association with four gang members who were working together and it benefitted the gang in that they intended to eliminate a perceived rival, a benefit that was more than reputational. He testified the crime furthered the gang in that two shots were fired to "eliminate a rival," so "now you have one less rival that they have to worry about at the location." He opined defendant and his three codefendants—Steven Lopez, Francisco Nava, and Ruben Perez—were all members of the Norteño criminal street gang at the time of the crime.

On September 21, 2023, the court found the gang enhancement and gang-related firearm enhancement true beyond a reasonable doubt. On October 27, 2023, defendant was resentenced to a term of 15 years to life pursuant to section 186.22, subdivision (b)(4)(B). Defendant was also ordered to pay a restitution fine in the amount of $500 pursuant to section 1202.4 and the court also imposed a parole revocation fine in the amount of $500 pursuant to section 1202.45, to be suspended pending successful completion of parole. He was also ordered to pay restitution in the amount of $3,316.51 pursuant to Penal Code section 1202.4, subdivision (f), a $30 criminal conviction assessment pursuant to Government Code 70373, and a $40 court operations assessment pursuant to Penal Code section 1465.8. Victim restitution as to victim C.A. was ordered to remain open. Defendant was awarded 2,074 credits for time served.

## DISCUSSION

We appointed counsel who filed an opening brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, requesting independent review of the record for arguable issues. Appellate counsel notified defendant that she was filing a *Wende* brief and informed defendant that he had 30 days from the filing of the brief to submit any claims, arguments, or issues that he wished our court to review. Our court also sent defendant a letter notifying him he could submit a letter stating any grounds on appeal he wanted our court to hear. We have received no reply from defendant.

After conducting a thorough independent review of the entire record in this matter, we are satisfied no arguable error exists and defendant's counsel has fully satisfied her responsibilities under *Wende*.

## DISPOSITION

The judgment is affirmed.